UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| MERRY ANN McCOY, | ] |
| Plaintiff, | ] |
| vs. | ] 7:09-cv-02375-LSC |
| JVC AMERICA, INC., | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

The Court has for consideration Defendant's motion to dismiss this action for lack of subject matter jurisdiction. (Doc. 14.) The motion has been briefed by the parties and is ripe for review.

I.   Factual and Procedural Background.[1]

On November 23, 2009, Merry Ann McCoy ("McCoy" or "Plaintiff") filed a pro se complaint against JVC America, Inc. ("JVC"), seeking damages based on racial discrimination and violations of the Civil Rights Act of 1964. Plaintiff retained counsel and filed a second amended complaint on February 23, 2010. (Doc. 8.) On April 15, 2010, JVC filed a motion to

---

[1] For the purposes of this opinion, the facts are accepted as alleged in the complaint. Recitation of the facts alleged by the plaintiff in this opinion is not to be construed as a verification that the allegations are true.

dismiss based on lack of subject matter jurisdiction. (Doc. 14.) JVC alleges that this matter is governed by an arbitration agreement entered into by Plaintiff and her immediate employer, Automation Personnel Services, Inc. ("Automation"). In the alternative, JVC alleges that Automation is an indispensable party, the absence of which requires dismissal of this action. Plaintiff argues that, as JVC is not a signatory to this agreement, it cannot enforce the arbitration agreement.

In January 2006, McCoy began employment at JVC through a temporary agency, Automation, as an operator in JVC's Screen Room department. McCoy informed JVC that she was interested in full-time employment. During her time at JVC, McCoy claims that JVC hired white employees without requiring them to serve lengthy tenures with temporary agencies, whereas McCoy was never offered employment, despite two years of temporary employment with the company.

In March 2008, Brenda Burth ("Burth"), the on-sight coordinator for Automation, discharged McCoy from employment. According to Burth, JVC required her termination for taking an extended lunch break. McCoy routinely observed white employees taking extended lunch breaks. These

employees were not terminated. Plaintiff seeks damage for discriminatory refusal to hire and discriminatory termination.

As a part of her employment with Automation, Plaintiff entered into an Arbitration Agreement. This agreement states, "Any dispute arising out of the Employee's employment with Employer, including termination of employment and all statutory claims, will be submitted to binding arbitration administered by the American Arbitration Association under its National Rules for the Resolution of Employment Disputes, or as mutually agreed." (Doc. 14, Ex. A, ¶1.) JVC now seeks to use this agreement to dismiss this action.

III.   Analysis.

In *First Options v. Kaplan*, the Supreme Court addressed the issue of who should determine arbitrability. 514 U.S. 938 (1995). The Court opined that questions regarding the jurisdiction of the arbitrator were "fairly simple." *Id*. at 943. In a unanimous opinion, the Court determined, "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed

about *that* matter." *Id.* (internal citations omitted). In determining the parties intent, the Court warned that the lower courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 944 (internal citations omitted).

The Eleventh Circuit took up the question of arbitrability in *Terminix Int'l Co. LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005). *Terminix* involved a 131-count, 246-page, 937-paragraph complaint alleging violations of the Florida Deceptive and Unfair Trade Practices Act, criminal racketeering, criminal false advertising, fraud, negligence, breaches of the duty of good faith and fair dealing, and breach of contract. *Id.* at 1329. Terminix sought enforcement of an arbitration agreement contained in the contracts between the two parties. *Id.* Palmer Ranch contended that the arbitration agreement was unenforceable because it deprived Palmer Ranch of "statutory remedies and rights including punitive damages, treble damages, damages and injunctive and declaratory relief under the FDUTPA, and attorney's fees." *Id.* The district court held that because the arbitration clause contained remedial restrictions and no severability clause, it was

not enforceable. *Id.* at 1331. The Eleventh Circuit reversed, saying that the district court not only misunderstood precedent, but also decided an issue expressly reserved by the parties to the judgment of an arbitrator.

The Court stated that ordinarily it would determine issues that "go to the validity of the arbitration clause itself, which is by default an issue for the court, not the arbitrator." *Id.* at 1333. But in this case, the Court noted that "the parties have contracted around that default rule," leaving the Court with "no reason for us to decide the subsidiary, antecedent questions." *Id.* The Court determined that the parties clearly and unmistakably evidenced their intention to have arbitrability determined by the arbitrator by incorporating the Commercial Arbitration Rules of the American Arbitration Association, which mandate that the arbitrator will determine his own jurisdiction. *Id.* at 1332 (quoting American Arbitration Association Rule 8(a), which states "the arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement"); *See also, CitiFinancial Corp., L.L.C. v. Peoples*, 973 So. 2d 332, 340 (Ala. 2007) ("We find the reasoning of the Eleventh Circuit . . . persuasive and hold that an

arbitration provision that incorporates rules that provide for the arbitrator to decide issues of arbitrability clearly and unmistakably evidences the parties' intent to arbitrate the scope of the arbitration provision.").

While jurisdictional questions may be reserved to the arbitrator, disputes that strike at the heart of the clause, those that would render it void *ab initio*, are not for the arbitrator to decide.  The Supreme Court has held that "if the claim is fraud in the inducement of the arbitration clause itself -- an issue which goes to the making of the agreement to arbitrate -- the federal court may proceed to adjudicate it."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).  In *Buckeye*, the Court essentially restated the rule in *First Options*; if the arbitration clause itself is void *ab initio*, there is no agreement to arbitrate, and therefore no authority to submit conflicts of any sort to an arbitrator.

Typically, in the temporary employee context, "where the special employer controls the means and manner of the temporary employee's work, the temporary employee is considered an employee of both the temporary agency and the special employer."  *Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680, 685 (M.D.N.C. 1997) (citing *Maynard v.*

*Kenova Chem. Co.*, 626 F.2d 359, 361 (4th Cir. 1980); *Beaver v. Jacuzzi Bros., Inc.*, 454 F.2d 284 (8th Cir. 1972); *Amarnare v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 611 F. Supp. 344 (S.D.N.Y. 1984)). Furthermore, arbitration agreements may be enforced by nonsignatories in certain circumstances. *Ex parte Stamey*, 776 So. 2d 85, 88-89 (Ala. 2000) ("Assent to arbitrate is usually to be manifested through a party's signature on the contract containing the arbitration provision. However, both Federal courts and Alabama courts have enforced exceptions to this rule, so as to allow a nonsignatory, and even one who is not a party, as to a particular contract, to enforce an arbitration provision within that same contract."). These circumstances include when claims are "intimately founded in and intertwined with the claims made against a party that is a signatory to the contract" or when "a third-party-beneficiary theory . . . affords the third party all the rights and benefits, as well as the burdens, of that contract, including those associated with arbitration." *Id.* at 89. As the Third Circuit has held, "[W]hether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary."

*E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,* 269 F.3d 187, 195 (3d Cir. 2001).  *See also, MS Dealer Serv. Corp. v. Franklin,* 177 F.3d 942, 947 (11th Cir. 1999) (allowing nonsignatory to compel arbitration when "the parties to a contract together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract."). Employers working with temporary employment agencies are third party beneficiaries of contracts between employment agencies and temporary employees. *See, e.g., Edgin v. Entergy Operations,* 331 Ark. 162, 166 (Ark. 1998) (finding when a security agency provided security officers at a power plant, "Entergy was a third-party beneficiary of the agreement signed by Edgin, despite the fact that Entergy was not specifically identified in the agreement by name"); *Dunkley v. Mellon Investor Servs. / Volt Mgmt.,* 2007 U.S. Dist. LEXIS 76228 *12 (D.N.J. Oct. 12, 2007) ("Volt is a staffing agency, providing temporary or contingent employees to its customers nationwide. Mellon contracted Volt to provide it with such contingent employees. The present arbitration agreement between Plaintiff and Volt was clearly made for the benefit of Volt's customers. Therefore, Mellon is

deemed to be an intended third party beneficiary of the Arbitration Agreement between Plaintiff and Volt.") The Eleventh Circuit has also allowed nonsignatories to invoke arbitration when a signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *MS Dealer Serv. Corp.*, 177 F.3d at 947 (citations omitted).

In the instant case, it is clear that Plaintiff entered into an arbitration agreement with Automation, the temporary agency who placed her with JVC. This agreement states that arbitration "will be conducted according to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association." (Doc. 14, Ex. A, ¶4.) As noted above, these rules include that the arbitrator will determine his own jurisdiction. Furthermore, the Plaintiff has made no arguments that would render the arbitration agreement itself void *ab initio*. The agreement Plaintiff entered provides, "Any dispute arising out of the Employee's employment with Employer, including termination of employment and all statutory claims, will be submitted to binding arbitration administered by the American Arbitration Association under its National Rules for the Resolution of

Employment Disputes, or as mutually agreed." (Doc. 14, Ex. A, ¶1.) Disputes subject to arbitration include "claims for breaches of any contract (express or implied), discrimination, torts, and/or claims based upon federal, state, or local ordinance, statute, regulation, constitutional provision, or any other law." *Id.* at ¶5. Therefore, Plaintiff has unmistakably evidenced her intention to submit all disputes arising from her employment with Automation to arbitration. Her present dispute with JVC arose from this employment. JVC is a third-party beneficiary of the contract between Automation and the Plaintiff. Furthermore, Plaintiff has alleged that her termination involved the concerted effort of both JVC and Automation, stating, "Brenda Burth, the on sight coordinator for Automation discharged McCoy from employment. Burth stated that JVC required her to be terminated ostensibly for taking an extended lunch break." (Doc. 8, ¶8.) Thus, whether the arbitrator has jurisdiction over this matter or whether Automation is an indispensable party to this action are questions left to the arbitrator to determine, in accordance with Plaintiff's express will.

III.   Conclusion.

Plaintiff has clearly and unmistakably evidenced her decision to submit questions of arbitrability to arbitration.  Therefore, Defendant's motion to dismiss will be GRANTED to the extent it seeks to compel arbitration.  A separate order will be entered.

Done this <u>15th</u> day of <u>July 2010</u>.

```
                              _____
                                    L. SCOTT COOGLER
                              UNITED STATES DISTRICT JUDGE
                                                      153671
```